IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| SHERI LESTER | ) Case No. 5:18-cr-00047 (TBR) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Sherri Lester's *pro se* Motion for Compassionate Release, (Mot. for Release), Dkt 57. The Government has responded, (Resp.), Dkt. 59. The time for Lester to reply has elapsed. For the reasons stated herein, Lester's Mot. for Release, Dkt. 57, is **DENIED**.

**I.   FACTUAL BACKGROUND**

This case began when the Drug Enforcement Administration (DEA) received information about Sheri Lester. *See* Presentence Investigation Report dated August 12, 2019 (PSR), Dkt. 28, ¶¶ 13–14. That information indicated that Lester would be driving from Louisville, Kentucky to Mayfield, Kentucky, and that once in Mayfield, Lester would deliver one pound of methamphetamine to someone. *See id.* Based on that information and a subsequent DEA investigation, law enforcement officials began surveilling Lester. *See id.* ¶ 14. On September 20, 2018, law enforcement officials observed Lester meet someone at a restaurant in Mayfield, at which point Lester accepted approximately $4,200 from that person. *See id.* Lester then delivered that money to another person in Louisville, and that person then gave Lester one pound of methamphetamine, which Lester was to deliver to Mayfield. *See id.*

1

On September 21, 2018, Lester was arrested by DEA agents while attempting to deliver one pound of methamphetamine. *See id.* ¶ 15. Lester ultimately pleaded guilty to Possession with the Intent to Distribute Methamphetamine and Conspiracy with Intent to Distribute Methamphetamine, and was sentenced, pursuant to her Rule 11(c)(1)(C) plea, to a 60-month period of incarceration. *See* Judgment and Commitment Order, Dkt. 31. Lester's projected release date is January 21, 2024. *See id.* Lester now seeks compassionate release. *See* Mot. for Release.

## II.   LEGAL STANDARD

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) in any case—

 (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

  (i) extraordinary and compelling reasons warrant such a reduction"

18 U.S.C.A. § 3582(c)(1)(A). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release

2

request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court shall engage in a "three-step inquiry." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.' " *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.' " *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and

compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant

(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A); *Elias*, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

### III. DISCUSSION

"[A]n imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105.

Lester claims that she has exhausted her administrative remedies, *see* Mot. for Release, and the Government does not dispute this fact, *see* Resp. at 3. It appears that Lester requested compassionate release from the BOP warden at FMC Carswell, her place of incarceration, on July 9, 2020.  *See* Request, Dkt. 57-1, at 1. The warden denied that request on July 20, 2020. *See id.* at 2. Lester appealed that denial in September of 2020, *see id.* at 3–4, and that appeal was

denied in March of 2021, *see id.* at 6. Accordingly, the Court finds that Lester has properly exhausted her administrative remedies under the First Step Act.

Lester states that extraordinary and compelling reasons exist because of her medical condition. Lester states that she has "several serious medical issues," including: "COPD and emphazima [sic], diabetes; high blood pressure; nodules in [her] mid and lower right lung; and blocked arteries [that] limit[ ] the capacity of [her] heart." Mot. for Release at 1.

Lester admits that several of her medical conditions are being regularly treated. Lester states that she receives medication for her diabetes and high blood pressure. *See id.* Similarly, Lester mentions that FMC Carswell provides inhalers for her COPD and emphysema. *See id.*

However, Lester alleges that her other lung conditions are not receiving enough attention. Lester claims that prior to entering custody she had a PET scan, which allegedly "showed a malignancy in [her] right lung." *Id.* According to Lester, "[w]e do not know the current status of the malignancy and the extent to which it may have spread." *Id.* Lester further alleges that FMC Carswell "has not provided any treatments for the lung nodules" and that her doctor "has not done any follow-up testing" or performed a biopsy. *Id.* Lester also states that her "oxygen was taken" at "[her] sentence[ing]." *Id.* at 2.

Likewise, Lester expresses concern about how FMC Carswell is treating her heart problems. Lester states that a stress test and echocardiogram "showed blocked capillaries and arteries around the heart." *Id.* 1–2. And although Lester has been prescribed aspirin, she claims that doctors "ha[ve] not considered [a] cardiac catheterization to eliminate the blockage." *Id.* at 2.

Other parts of the record indicate that Lester has previously complained of a "spot on [her] tongue" and that her illnesses predispose her to COVID-19. Request at 1, 4, 7. However, Lester does not raise either of those issues today. *See* Mot. for Release.

The Government "concede[s] that [Lester's] conditions rise to the level of extraordinary and compelling reasons considering the COVID-19 pandemic." Resp. at 6. But the Government argues that extraordinary and compelling reasons do not exist in this case because Lester has been vaccinated against COVID-19. *See id.* The Government misses the point of Lester's Mot. for Release. Lester is not arguing that her medical conditions are extreme and compelling circumstances because of the COVID-19 pandemic; rather, Lester is arguing that her medical conditions, on their own, are extreme and compelling circumstances. *See* Mot. for Release. Accordingly, the Government's concession and the cases cited in its Response are not relevant to this decision.

The Court first addresses Lester's medical conditions that she acknowledges are being treated. *See* Mot. for Release at 1. Lester's diabetes, high blood pressure, COPD, and emphysema are not extraordinary and compelling reasons because all of these conditions are receiving regular treatment. *See, e.g.*, *United States v. Bellmore*, No. 17-20668, 2020 WL 6580408, at *3 (E.D. Mich. Nov. 10, 2020) (finding that common diseases that are "regular[ly] treat[ed] and . . . actively monitored . . . are not grave, exceptional, or extreme").

The Court now turns to Lester's concerns about her lungs. Lester first alleges that one of her PET scans showed a malignancy. *See* Mot. for Release at 1. The Court could find no evidence of a malignancy in the record. This malignancy could not refer to Lester's nodules, because the nodules are "benign." Medical Records, Dkt. 61-2, at 268. And in fact, one physician noted that Lester's "[b]ronchial brushing was negative for malignancy." *Id.* at 311.

Simply put, the record does not demonstrate that Lester has a malignancy in her lung or that FMC Carswell is providing inadequate treatment for such a condition.

Lester also maintains that she is not receiving treatment for nodules in her mid and lower right lung. *See* Mot. for Release at 1. However, the record indicates otherwise. On December 16, 2020, Lester received a CT scan of her chest. *See* Medical Records at 311. That scan found that "[w]ithin [Lester's] right lung, there is a demonstration of two nodules, both [of which] have calcifications centrally." *Id.* The physician there recommended a follow-up CT scan in six months "to insure stability of these nodules." *Id.* A little more than six months later, on July 23, 2021, Lester received another CT scan.[1] *See id.* at 267. Those tests showed that Lester's lung nodules had remained stable. *See id.* at 268. As a result, the doctor there concluded that Lester's lung nodules "are benign in nature since they are calcified" and stated that "[t]here is no further follow up needed as far as the lung nodules are concerned." *Id.* Another physician corroborated that conclusion, stating that there was "[n]o need for more CT for [Lester's] lung nodules." *Id.* at 18. Lester has not alleged any subsequent symptoms, like COPD exacerbation, which would require doctors to reexamine her nodules. *See id.*; *see also* Mot. for Release. Nor has Lester directed the Court to any evidence that FMC Carswell would provide inadequate care in the event that new problems with her nodules arose. *See* Medical Records; *see also* Mot. for Release. The record therefore indicates that Lester's lung nodules do not favor a finding of extraordinary and compelling reasons.

---

[1] It's possible that Lester also received a chest scan in February of 2021. *See* Medical Records at 299 (finding on February 3, 2021, that Lester's right lung is "not definitively calcified"); *see id.* at 84 (stating on February 3, 2021, that "Lester CT of the chest has calcified nodules needs 6 months follow up"). However, it is unclear to the Court whether these CT scans actually occurred in February or if they are citing to prior CT scans. Regardless, these reports indicate that FMC Carswell has been actively monitoring Lester's lung nodules.

So too for Lester's allegation of being deprived oxygen. Although it is unclear whether Lester claims that she is currently being deprived of oxygen or if she was only deprived of oxygen after her sentencing, the record shows that Lester has brought this issue to the attention of her physicians. *See* Medical Records at 69. Lester's physicians considered this information when they created a treatment plan that involved 10 medications, six laboratory requests, two radiology requests, an EKG, and multiple follow-up appointments. *See id.* at 67–73. With all of the treatment that Lester has received for her lungs, this one-off allegation in the Mot. for Release does not rise to the level of extraordinary and compelling circumstances.

The Court finally addresses Lester's concerns about her heart. It appears from the record that FMC Carswell is appropriately treating Lester's heart condition. On December 16, 2020, one of Lester's physicians observed that Lester had "somewhat prominent calcifications within the right and left coronary arteries," at least "somewhat more than usual . . . for a patient in [Lester's] age group." Medical Records at 311. About four months later, Lester received an echocardiogram, stress test, and EKG to further evaluate the condition of her heart. *See id.* at 275, 280–83. Those tests came back normal, showing "normal wall motion," "no evidence of stress induced ischemia," and "[no] evidence of ischemia or prior infarct." *Id.* at 283. What's more, Lester only alleges that doctors have not considered a cardiac catheterization to eliminate the blockage of her arteries and capillaries. *See* Mot. for Release at 2. But neither Lester nor the Court are medical experts capable of determining whether a cardiac catheterization would be beneficial. Ultimately, there is no interpretation of the record that suggests such a procedure would be necessary. Nor does the record indicate that Lester is receiving inadequate care for her heart conditions. *See* Medical Records.

In sum, the Court concludes that extraordinary and compelling reasons do not warrant a reduction to Lester's sentence of incarceration.

Because Lester has failed to provide an extraordinary and compelling reason for compassionate release, the Court need not address the relevant § 3553(a) sentencing factors. The Court also observes that Lester did not discuss the § 3553(a) factors in her Mot. for Release. *See* Mot. for Release. And although the Government mentions the sentencing factors in its Response, it does not analyze how the sentencing factors specifically relate to Lester. *See* Resp. at 10–11. Against this backdrop, the Court chooses not to proceed with a § 3553(a) analysis.

### IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant Sheri Lester's Motion for Compassionate Release, Dkt. 57, is **DENIED**.

**IT IS SO ORDERED**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 13, 2021

cc: Sheri Lester
19503-033
Carswell Federal Medical Center
Inmate Mail/Parcels
P.O. BOX 27137
Fort Worth, TX 76127
PRO SE